**UNITED STATES BANKRUPTCY COURT**
DISTRICT OF NEW JERSEY
M.L. KING JR. FEDERAL BUILDING
50 WALNUT ST., 3RD FLOOR
PO BOX 1352
NEWARK, NJ 07101-1352
(973) 645-2464

NOVALYN L. WINFIELD
BANKRUPTCY JUDGE

FILED
JAMES J. WALDRON, CLERK
JAN 9 2007
U.S. ____ COURT
____ DEPUTY

January 9, 2007

Virginia E. Fortunato, Esq.
Mark Goldman, P.C.
55 Washington Street
East Orange, NJ 07017

Frances Gambardella, Esq.
Zucker, Goldberg & Ackerman
200 Sheffield Street
Suite 301
P.O. Box 1024
Mountainside, NJ 07092-0024

        RE:    **Mary E. Royal**
                  Case No.:    **05-20565 (NLW)**
                  <u>**LETTER OPINION**</u>

Dear Counsel:

This matter is before the Court on the objection by Mary E. Royal ("Debtor") to the proof of claim filed by Washington Mutual Bank, FA ("WaMu") and the relief from stay motion filed by GMAC Mortgage Corporation ("GMAC").[1] As set forth below, the Court finds that as of December 11, 2006, the Debtor was not in arrears on her postpetition payments and therefore, the GMAC relief from stay motion is denied. Further, the Court finds that the proof of claim filed on behalf of TCRM must be reduced to reflect a total prepetition claim of $3,073.65, which consists of $2,793.00 on account of attorneys fees and foreclosure fees and $280.65 on account of miscellaneous fees.

---

[1] It appears that TCRM Advisors, Inc. ("TCRM") is the mortgagee, and that PNC Mortgage was the first mortgage loan servicer. Thereafter WaMu, and then GMAC serviced the loan.

The motions before the Court are core proceedings under 28 U.S.C. § 157(b)(2)(B) and (G). What follows are the Court's findings of fact under Bankruptcy Rule 7052.

As is true of many relief from stay motions, the roots of the present dispute lie in the pre-petition period. The mortgage dated July 27, 1998, between the Debtor and TCRM contained a provision for a tax and insurance escrow. (Fortunato Cert., Ex. A). However, it appears that until some point in 2003 neither the Debtor nor TCRM treated the mortgage loan as an escrow loan. Instead, the Debtor remitted the principal and interest payments to PNC Mortgage and the Debtor paid the taxes herself. (Id. at ¶¶ 4 and 5).

Though the motion papers do not expressly state that WaMu became the mortgage servicer in 2003, that appears to be the case because by December, 2003, the Debtor was receiving monthly loan statement from WaMu. (Id., Ex. C). It is at this point that the Debtor's troubles began. It appears that WaMu concluded that the monthly loan payment should have included a tax escrow amount. Accordingly, the monthly payment was increased from $622.23 (principal and interest) to $1,896.26. (Id., 75, Ex. C). The Debtor points out that at this time she was current with her tax payments. (Id.).

The Debtor apparently continued to make her principal and interest payments, however, WaMu began returning the Debtor's payments. In June, 2004, WaMu commenced a foreclosure action. (Id., ¶ 6). The Court infers that the foreclosure was commenced because the Debtor was in default as a result of WaMu returning her monthly payments. During this time the Debtor began to purchase money orders in the amount of $622.23 and accumulate them. (Id., ¶ 7). It appears that an effort was made to resolve the payment issue while the foreclosure proceeding was pending. The Court has been informed that in November, 2004, Debtor's counsel, Mark Goldman, twice sent

letters to foreclosure counsel in order to clear up the matter. Foreclosure counsel did not respond. On January 24, 2005, a final judgment in foreclosure was entered. (Id. ¶ 6). Thereafter, the Debtor filed her Chapter 13 petition on April 4, 2005. The Debtor's plan estimated her prepetition arrears on the mortgage to be approximately $7,500.00 which she proposed to pay in a lump sum payment of $6,222.00 at confirmation, with the remaining balance to be satisfied by periodic plan payments.

The Debtor's inability to resolve her payment dispute with the mortgage loan servicer has persisted in the Chapter 13 case despite determined efforts by Debtor's counsel. The case has been marked by protracted motion practice, which appears to have been largely caused by the mortgage loan servicer and its counsel. For example in August, 2005, WaMu filed a Relief from Stay motion returnable September 6, 2005, claiming that the Debtor had not made any post-petition payments since the case was filed. WaMu asserted that four monthly payments in the amount of $1,898.26 had not been made. Debtor opposed the motion on the basis that the amount of the monthly mortgage payments claimed by WaMu is incorrect, and that she personally makes her tax payments. The stay relief motion was only finally concluded by order dated April 12, 2006. Prior to that date, four adjournments were granted to permit the parties to resolve these issues. While the motion was pending, the Debtor submitted payments totaling $8,711.32 (14 payments @ $622.23) to the mortgagee, and requested a tracer on an outstanding money order.

Ultimately, counsel reached an agreement to apply the Debtor's lump sum payment of $8,711.32 to the claimed pre-petition and post-petition arrears. (Id. at ¶ 9). Presumably because the post-petition arrears had been satisfied, counsel for WaMu sought to withdraw its relief from stay motion. Debtor's counsel objected to the withdrawal of the motion because it left unresolved other

3

issues relating to the payment amount. For example, Debtor's counsel avers that while the relief from stay motion was pending she learned that the City of East Orange was receiving tax payments from both the Debtor and the mortgagee. (Id. at ¶ 9). After some additional negotiations, counsel agreed to resolve the motion by submission of an order encaptioned "Order Regarding Secured Creditor's Motion to Vacate Stay and Debtor's Objection to Secured Creditor's Withdrawal of Motion," which was signed on April 12, 2006. The terms of the order provided that:

> (I) on or before January 19, 2006, the Secured Creditor is to provide to Debtor's attorney information on escrow shortage, specifically a list of dates and amounts of tax/insurance payments with respect to Debtor's account;
>
> (ii) the Debtor is to advise the Secured Creditor if, going forward, she wants her account to be changed to an escrow account;
>
> (iii) on or before January 29, 2006, the Secured Creditor is to provide a complete, updated post-petition payment history (form 16) to Debtor's attorney;
>
> (iv) on or before January 29, 2006, the Debtor is to provide any proof of pre-petition payments and/or objections to the months (what monthly pre-petition payments are listed as delinquent) included in the Secured Creditor's Proof of Claim; and
>
> (v) on or before January 29, 2006, the Secured Creditor is to complete its review of the Debtor's proof of tax payments previously supplied to Secured Creditor and confirm if it will seek a refund of tax payments from the City of East Orange (with corresponding plans to amend its Proof of Claim upon receipt of refund).

Apparently Debtor's counsel was also simultaneously negotiating with mortgagee's counsel with regard to the proof of claim filed by WaMu on behalf of TRCM. Such negotiation was at least partially successful as the proof of claim for prepetition arrearages was reduced from $33,442.92 to $15,262.66, as evidenced by a subsequent proof of claim dated May 5, 2006. (Fortunato Cert., Ex.

F). The Debtor's filed an objection to this second proof of claim in October, 2006, in order to reduce the prepetition arrearages even further.

Prior to the hearing on the Debtor's objection, GMAC filed a second relief from stay motion asserting that six payments of $991.96 were not made.[2] As happened with the first stay relief motion, this motion was adjourned on at least two occasions. It was finally determined by counsel for GMAC that the Debtor was not in arrears with her postpetition payments. The nonexistence of postpetition arrearages forms the basis for the Court's denial of the relief from stay motion.

The Debtor's objection to the proof of claim was likewise adjourned twice, and finally heard on December 11, 2006. The adjournments were required because on both occasions GMAC's counsel did not have the file, and therefore was unprepared. As a sanction for the failure of GMAC's counsel to be prepared, Debtor's counsel was awarded a $250.00 appearance fee because her appearances were unnecessary.

At the December 11, 2006 hearing it was determined that the documentation provided by the Debtor and further negotiations between counsel warranted a reduction of the May 5, 2006 proof of claim to the sum of $3,384.75, That amount was comprised of $2,793.00 for attorney fees and foreclosure fees, $311.10 for late charges and $280.65 for miscellaneous fees. At the hearing, the Debtor indicated that she was not ready to agree to inclusion of the late charges. GMAC's counsel was afforded an additional opportunity to justify the late fees, and if she could not do so, Debtor's counsel was permitted to submit a supplemental order further reducing the proof of claim by $311.10. No additional proofs were submitted, and the Court will enter the order that has been

---

[2] A Notice of Transfer of Claim, naming GMAC as the transferee of WaMu's claim, was filed with the Court on November 3, 2005.

5

submitted by Debtor's counsel. Thus, the proof of claim for pre-petition arrearages is reduced to $3,073.65.

The Court has engaged in this lengthy factual recitation for the express purpose of making it plain that both parties have had a full and fair opportunity to litigate both the relief from stay motion and the objection to the proof of claim. Accordingly, the Court is satisfied that the proof of claim must be amended to reflect a prepetition arrearage claim of $3,073.65, and that the relief from stay motion is properly denied.

/s/ Novalyn L. Winfield
NOVALYN L. WINFIELD
United States Bankruptcy Judge